FILED: 12/1/2021 2:42 PM
Vickie Edgerly, District Clerk
Orange County, Texas
Envelope No. 59605102
Reviewed By: Maria Hernandez

CAUSE NO. 210521-C

| | | |
|---|---|---|
| NATHANIEL & SHIRLEY CROSSLEY<br>*Plaintiffs* | § § § § | IN THE DISTRICT COURT |
| v. | § § § § | _____ JUDICIAL DISTRICT<br>163rd |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY<br>*Defendant* | § § § | ORANGE COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS' NATHANIEL & SHIRLEY CROSSLEY (the "Plaintiffs") complaining of and against ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("ALLSTATE") and hereby respectfully show unto the Court and Jury as follows:

### I.   DISCOVERY CONTROL PLAN

1.  Plaintiffs intend for discovery to be conducted under Level 1 of Texas Rule Civil Procedure 190.2. In the event that the parties require a more tailored form of discovery, the parties will submit a tailored discovery control plan to the Court, but otherwise ask that all deadlines imposed by Tex. R. Civ. P. 190.2 be followed in this matter.

### II.   PARTIES

2.  Plaintiffs, NATHANIEL & SHIRLEY CROSSLEY are persons and, residents of Orange County, Texas and citizens of the state of Texas.

3.  Defendant, ALLSTATE is a for-profit, foreign insurance company doing business in the state of Texas with its principal place of business in Illinois (hereinafter "ALLSTATE"). Allstate may be served with process by serving its registered agent for service via certified mail, return

receipt requested at the following address: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

## III.   JURISDICTION AND VENUE

4. This Court has jurisdiction over this case in that the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5. Venue is mandatory and proper in Orange County, Texas because all or a substantial part of the events giving rise to the lawsuit occurred in this county (*see* TEX. CIV. PRAC. & REM. CODE § 15.002).

6. ALLSTATE engages in the business of insurance in the State of Texas. The conduct of ALLSTATE in the State of Texas includes:

   (a) The making and issuing of contracts of insurance with the Plaintiffs;

   (b) The taking and receiving the application of insurance for insurance from the Plaintiffs;

   (c) The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiffs'; and

   (d) The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiffs'.

7. Pursuant to Tex. R. Civ. P. 47, Plaintiffs plead that the amount in controversy is under $250,000, <u>excluding</u> interest, statutory or punitive damages and penalties, and attorney's fees and costs. *See* Tex. R. Civ. P. 47(c)(1).

## IV.   CONDITIONS PRECEDENT

8. All conditions precedent to recovery have been performed, waived, or have occurred.

## V. JUDICIAL NOTICE

9. Plaintiffs request this Court take judicial notice of Title 28 of the Texas Administrative Code, specifically 28 T.A.C. §21.201 et seq. relating to "Unfair Claims Settlement Practices Rules" including 28 T.A.C. §21.203 through §21.205. *See* Tex. R. Evid. 204(b)(2).

10. Plaintiffs request this Court take judicial notice of 28 T.A.C. §5.997(a), (d)-(e), which incorporates the Texas Department of Insurance's "Consumer Bill of Rights" for homeowners, dwelling, and renter's insurance. *See* Tex. R. Evid. 204(b)(2).

## VI. AGENCY: ACTUAL/APPARENT AUTHORITY

11. At all times relevant hereto, Mr. Bradenberg, the adjuster, was acting as an agent of ALLSTATE with actual or apparent authority and within the course and scope of his agency relationship.

## VII. FACTS

A. The Policy

12. Allstate sold Plaintiffs a homeowner's insurance policy, policy number 000886501762 (hereinafter referred to as the "policy"). The policy in question contains coverage for windstorm damage. During the underwriting process, Allstate determined that the risk was acceptable without any modifications, alterations, or changes to the property.

13. The insuring agreement required the Plaintiffs to make payments to Allstate and in exchange the insurance company would indemnify the Plaintiffs in the event of a covered loss. Plaintiffs faithfully paid the required premium, and the relevant policy was in full effect during the Hurricane made the basis of this lawsuit, providing property, personal property, loss of use, and other coverages.

14. Plaintiffs reasonably expected that the policy they purchased from ALLSTATE included coverage for windstorm damage including coverage for their dwelling, other structures, personal property, debris removal, and loss of use of property.

B. Hurricane Laura

15. On or about August 27, 2020, Plaintiffs' property sustained damages from Hurricane Laura. Hurricane Laura reached Category 4 status with wind speeds of 150 MPH and gusts of 185 MPH as landfall was made around 1:00 AM near Cameron, Louisiana. Hurricane Laura maintained 140 MPH wind speed with gusts of 185 MPH as it passed just east of Hackberry, Louisiana. Hurricane Laura maintained Category 4 status until passing Dequincy, Louisiana. The property in question sustained hurricane force winds, including wind gusts in excess of sustained winds, from the only Category 4 hurricane to make landfall in Louisiana.

16. On or about August 27, 2020, the Crossleys' property sustained damage due to Hurricane Laura.  Mr. and Mrs. Crossley identified damage to the roof, interior, other structures and exterior elevations of the home. The Crossleys promptly reported the property damage Allstate and immediately took steps to protect the property from further damage.

17. Plaintiffs filed a claim with their insurance company, ALLSTATE, for the damages to their property caused by Hurricane Laura including roof damage, damage to other structures such as the fence, and interior damages to her home. Plaintiffs asked that ALLSTATE cover the cost of repairs to the property pursuant to the policy and any other available coverages under the policy.

18. ALLSTATE outsourced its investigative duties, claims handling, and coverage decisions to Mr. Norm Bradenberg.

19. On September 5, 2020, the field adjuster assigned by ALLSTATE, met the Plaintiffs to conduct the inspection. ALLSTATE's adjuster, Mr. Bradenberg, undervalued the damages to

Plaintiffs' home and other structures. For example, Mr. Bradenberg missed quite a bit of covered damages. For example, there is significant damage to the stucco of the house on the right, rear and left elevations, which he did not account for. Despite inspecting the property on September 5, 2020, Allstate did not issue any payment or complete its estimate until 2 months later, on November 22, 2020. Additionally, Mr. Bradenberg did not account for the wall that needed to be redone in the master bedroom, and did not account for the carpet being replaced, either. Furthermore, although he identified interior damages in the living room, kitchen, dining room, and hallway, he gave an inadequate amount of money to make the necessary repairs.

20. ALLSTATE failed to conduct a reasonable investigation and failed to properly adjust the claim, which resulted in an improper denial of part of Plaintiffs' claim. Defendant's unreasonable investigation resulted in an improper denial of a valid claim and underpayment of proceeds due under the policy. As a result of Defendant's unreasonable investigation and handling of the claim, the damages to Plaintiffs' property worsened.

21. To date, ALLSTATE to deny coverage for a valid claim and continue to deny payment for proceeds due under the policy. As such, Plaintiffs' claim remains unpaid, and Plaintiffs have not been able to properly repair the Property.

22. ALLSTATE failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the policy. Specifically, it failed and refused to pay full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. ALLSTATE's conduct constitutes a breach of the insurance contract between ALLSTATE and Plaintiffs.

23. ALLSTATE failed to attempt to settle Plaintiffs' claim in a fair and equitable manner, although ALLSTATE liability to pay Plaintiffs were reasonably clear under the Policy. Allstate ignored evidence supporting payment of the full damage on the claim, relying instead on cursory conclusions from its adjusters or coverage defenses that are absent in the insuring agreement. In doing so, ALLSTATE violated the insurance adjusting maxim to promptly pay claims with liability is reasonably clear. ALLSTATE's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060 (a)(2)(A).

24. ALLSTATE refused to fully compensate Plaintiffs under the terms of the Policy, even though ALLSTATE failed to conduct a reasonable investigation. Specifically, ALLSTATE performed an outcome-oriented investigation by ignoring evidence supporting coverage. ALLSTATE's unreasonable investigation resulted in a biased, unfair, and inadequate evaluation of Plaintiffs' losses and resulted in further damage to Plaintiffs' property. ALLSATE's conduct constitute a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

25. ALLSTATE failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated time of receiving notice of Plaintiffs' claim. Notwithstanding the claim being originally presented in August 2020, ALLSTATE inspected the property on September 5, 2020; however, did not complete the estimate until November 22, 2020, three months after the storm. This is an express violation of the contract and of the insurance code. ALLSTATE's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

26. Upon information and belief, the ALLSTATE has accepted the policy premiums with no intention of providing any coverage under the insuring agreement.

## VIII. CAUSES OF ACTION

### A. COUNT 1: ALLSTATE breached its contract with Insureds

27. Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

28. To prevail on a valid breach of contract claim, a plaintiffs must prove that 1) there was a valid contract; 2) that Plaintiffs' have performed his obligations under the contract or tendered performance; 3) that the defendant has breached the contract in some manner; and 4) Plaintiffs' have sustained damages as a result of defendant's breach. *See Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied).

29. At the time Hurricane Laura damaged Plaintiffs' property, Plaintiffs had in place a policy issued by ALLSTATE. Defendant does not dispute that a valid contract was in place.

30. Plaintiffs' premiums were current, and all conditions precedent to recovery were made. Furthermore, Plaintiffs fulfilled their obligations under the policy, and more specifically, executed their duties under the contract after the loss.

31. ALLSTATE wrongfully failed to comply with the terms of the contract, as it relates to their duties after loss, by failing to conduct a reasonable investigation and pay Plaintiffs the full benefits owed after a covered loss. ALLSTATE is therefore in breach of the contract of insurance issued to Plaintiffs.

32. ALLSTATE's conduct constitutes a breach of contract resulting in damages to the Plaintiffs.

### B. COUNT 2: ALLSTATE violated the Deceptive Trade Practice Act.

33. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

34. Plaintiffs are "consumers" as defined by TEX. BUS. & COMM. CODE § 17.45(4). Plaintiffs sought or acquired goods or services by purchasing those goods or services from ALLSTATE. ALLSTATE and violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") (TEX. BUS. & COM. CODE §17.44 et seq.) because they engaged in false, misleading and/or deceptive acts or practices that Plaintiffs relied on to their detriment.

35. The acts and omissions of Defendants also constitute violations of the Texas Deceptive Trade Practice Act, including, but not limited to:

   a. Committing false, misleading or deceptive acts or practices as defined by §17.46(b); and

   b. Use of employment of an act or practice in violation of the Texas Insurance Code Chapter 541.151 et seq. as described herein.

36. The acts and omissions of Defendant were a producing cause of the Plaintiffs' damages.

37. Defendant's conduct was committed knowingly and/or intentionally because, at the time of the acts and practices complained of Defendant had actual awareness of the falsity, deception or unfairness of the acts or practices giving rise to Plaintiffs claim and they acted with a specific intent that Plaintiffs' act in detrimental reliance on the falsity or deception and/or in detrimental ignorance of the unfairness.

38. Plaintiffs gave Defendant notice as required by DTPA §17.50(a), and time to respond to such notice has expired.

### C. COUNT 3: ALLSTATE violated Ch. 541 of the Texas Insurance Code.

39. Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

40. ALLSTATE violated the TEXAS INSURANCE CODE § 541 et seq. because it engaged in unfair and/or deceptive acts or practices in the business of insurance. Specifically, its acts and omission include violation of:

(a) Tex. Ins. Code §541.051;

(b) Tex. Ins. Code §541.052;

(c) Tex. Ins. Code §541.059;

(d) engaging in unfair settlement practices by:

   (i) misrepresenting to Plaintiffs' a material fact or policy provision relating to coverage at issue TEX. INS. CODE §541.060(a)(1);

   (ii) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim with respect to which liability has become reasonably clear TEX. INS. CODE §541.060(a)(2);

   (iii) failing to promptly provide Plaintiffs a reasonable explanation of the factual and legal basis in the policy for the denial of the claim TEX. INS. CODE §541.060(a)(3);

   (iv) failing to affirm or deny coverage within a reasonable time or submit a reservation of rights letter TEX. INS. CODE §541.060(a)(4); and

   (v) refusing to pay a claim without conducting a reasonable investigation of the claim TEX. INS. CODE §541.060(a)(7).

(e) misrepresenting Plaintiffs' insurance policy by:

   (i) making an untrue statement of material fact TEX. INS. CODE §541.061(1);

   (ii) failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made TEX. INS. CODE §541.061(2); and

   (iii) making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact TEX. INS. CODE §541.061(2); and

(f) §17.46(b) of the TEXAS DECEPTIVE TRADE PRACTICE ACT, incorporated by TEXAS INSURANCE CODE §541.151.

41. Defendant's conduct was committed knowingly because it had actual awareness of the falsity, unfairness or deception of their acts or practices made the basis for Plaintiffs' claim for damages under the TEXAS INSURANCE CODE.

42. Plaintiffs gave Defendant notice as required by §541.154 of the TEXAS INSURANCE CODE. The time to respond to such notice has expired.

43. Defendant's conduct described above was a producing cause of Plaintiffs' damages.

### D. COUNT 4: ALLSTATE violated the Texas Prompt Payment of Claims Act

44. Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

45. ALLSTATE violated the Texas Insurance Code Ch. 542 because it failed to do the following within the statutorily mandated time of receiving all necessary information:

   (1) Failing to timely acknowledge the Plaintiffs' claim;

   (2) Failing to commence an investigation of Plaintiffs' claim;

   (3) Failing to request all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated deadlines;

   (4) Failing to give proper notice of the acceptance or rejection of part or all of Plaintiffs' claim;

   (5) Failing to accept or deny Plaintiffs full and entire claim within the statutorily mandated time of receiving all information;

   (6) Failing to pay Plaintiffs' claim without delay; and

   (7) Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiffs' claim.

46. ALLSTATE violated the Texas Insurance Code Ch. 542 by:

   (1) Knowingly misrepresented to the Plaintiffs pertinent facts or policy provisions relating to coverage;

   (2) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policy;

   (3) Not attempting in good faith to effect a prompt, fair, and equitable settlement of the claim when liability became reasonably clear; and

   (4) Compelling Plaintiffs to institute a suit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered in the suit brought by Plaintiffs.

47. Such failures constitute violations of Texas Insurance Code §§ 542.055, 542.056, 542.057, and 542.058. As a result of the foregoing violations, Plaintiffs request damages under Texas Insurance Code § 542.060.

### E. COUNT 5: ALLSTATE breached its duty of good faith and fair dealing

48. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

49. ALLSTATE owed Plaintiffs' a duty of good faith and fair dealing including the duty to pay covered claims when liability is reasonably clear. ALLSTATE breached this duty when it conducted an unreasonable investigation, denied Plaintiffs' claim, and misrepresented material facts because Defendant knew or should have known that it was reasonably clear that Plaintiffs' claim was covered. Defendant's breach of this duty was a proximate cause of Plaintiffs' damages.

### F. COUNT 6: Fraudulent Misrepresentation

50. Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

51. ALLSTATE made various representations to the Plaintiffs regarding their claim, including material representations regarding the extent of damages sustained to Plaintiffs' home, material representations regarding policy coverages, whether or not claims were covered, the value of claim, the application of policy exclusions, and the severity of the damage which were material and false. At the time ALLSTATE made the representations it knew the representations were false or made the representations recklessly as a positive assertion without knowledge of the truth. Defendant made these representations with the intent that the Plaintiffs' act on them by not further pursuing claim or thinking there was no other money to recover. Plaintiffs relied on the representations, and this caused injury.

52. A breach of fiduciary duty is a form of constructive fraud. The acts and omissions of ALLSTATE constitute constructive fraud.

## IX.  AMBIGUITY

53. The policy in place at the time of the date of loss, policy number 000886501762 contained patent and latent ambiguities concerning the terms of the policy governing the insureds' duties after loss.

## X.  WAIVER AND ESTOPPEL

54. ALLSTATE has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## XI.  DAMAGES

55. As a direct result of Defendant's conduct, Plaintiffs have suffered economic damages all of which they are entitled to recover. Plaintiffs are entitled to recover, in addition to the amount of the claim, interest on the amount of the claim at the rate of 10 percent a year as damages, together with reasonable attorney's fees. Plaintiffs are also entitled to recover mental anguish damages because Defendant acted in bad faith and because Defendant's knowing conduct was the producing cause of Plaintiffs' mental anguish.

56. Pursuant to the DTPA and the TEXAS INSURANCE CODE, Plaintiffs are also entitled to recover treble damages because Defendant's conduct was committed knowingly.

57. Plaintiffs are entitled to exemplary damages as a result of Defendant's breach of duties owed.  When viewed objectively from the standpoint of the Defendant at the time of the occurrence in question, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others and which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## XII. ATTORNEY'S FEES

58. Pursuant to Texas Civil Practices & Remedies Code §§38.001, *et seq.*, DTPA § 17.50(d), and Texas Insurance Codes § 541.152 and §542.060, Plaintiffs seek recovery of their reasonable and necessary attorney's fees and court costs.

## XIII. PRAYER AND JURY DEMAND

59. For these reasons, Plaintiffs ask that they have judgment against Defendant for economic damages, mental anguish damages, treble damages, exemplary damages, reasonable and necessary attorney fees, pre-judgment and post-judgment interest as allowed by law, costs of suit, and all other relief to which Plaintiffs may show themselves entitled. Plaintiffs request a trial by jury, and tender the appropriate fee herein.

Respectfully Submitted,
The Brasher Law Firm, PLLC

By: */s/ Nishi Kothari*
Clint Brasher
Texas Bar No. 24009915
clint@brasherattorney.com
Nishi Kothari
Texas Bar No. 24087862
nishi@brasherattorney.com
Joe Muckleroy
Texas Bar No. 24065801
joe@brasherattorney.com
1122 Orleans
Beaumont, Texas 77706
(409) 832-3737 Telephone
(409) 832-3838 Fax
*Attorneys for the Plaintiffs*

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cheyann Glenn on behalf of Nishi Kothari
Bar No. 24087862
cheyann@brasherattorney.com
Envelope ID: 59605102
Status as of 12/1/2021 4:09 PM CST

Associated Case Party: Nathaniel Crossley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheyann Glenn | | cheyann@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |
| Nishi Kothari | | nishi@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |
| Caryl McBroom | | caryl@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |

Associated Case Party: Shirley Crossley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheyann Glenn | | cheyann@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |
| Nishi Kothari | | nishi@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |
| Caryl McBroom | | caryl@brasherattorney.com | 12/1/2021 2:42:49 PM | SENT |